UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMIN FRANKLIN
FRANCHISING SPE LLC et al.,

              Plaintiffs,                      Case No. 2:24-cv-10286

v.                                     Honorable Susan K. DeClercq
                                     United States District Judge

DAVID MICHAEL PLUMBING
INC. et al.,

              Defendants.

_____/

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTS II AND III OF COUNTERCOMPLAINT (ECF No. 19)**

In this case, the relationship between several franchisors and their franchisee broke down. The franchisors then sued, and the franchisee brought counterclaims—two of which are the subject of this motion to dismiss. For the reasons explained below, these two counterclaims fail as a matter of law, so they will be dismissed.

## I. BACKGROUND

Plaintiffs Benjamin Franklin Franchising, One Hour Air Conditioning Franchising, and Mister Sparky Franchising (collectively "Ben Franklin") are each party to franchise agreements with Defendant David Michael Plumbing, Inc. (DMP). ECF No. 1 at PageID.1. In total, there were seven franchise agreements. *See* ECF No. 16 at PageID.99–100.

In late 2023, the Parties' relationship soured. *Id.* at PageID.103. Ben Franklin then sued, alleging that DMP "flouted their contractual obligations under the Franchise Agreements, intentionally underreported sales and underpaid royalties and advertising fees due on those sales, misused Plaintiffs' trademarks, and now have abandoned their Franchise Agreements." ECF No. 1 at PageID.1. Ben Franklin alleges that it properly terminated all seven of the franchise agreements, and now seeks to enforce their noncompete covenants. *See id.* at PageID.21–22.

DMP responds that the terminations were unjustified. ECF No. 16 at PageID.104. Therefore, it brought counterclaims for breach of contract, declaratory judgment, promissory estoppel, and violations of the Michigan Franchise Investment Law (MFIL). *Id.* at PageID.105–09. Ben Franklin moved to dismiss the DMP's counterclaims for promissory estoppel and violations of the MFIL. ECF No. 19.

As for promissory estoppel, DMP alleges that in an April 2023 meeting, Ben Franklin's Brand President, Lance Sinclair, represented to DMP's Executive Vice President, Karla Michael, that "should DMP decide to end the franchise relationship, DMP could buy out the term of any unexpired franchise agreements." ECF No. 16 at PageID.101. "Sinclair promised Ms. Michael that, in such event, DMP would keep its customers, and that DMP could continue to operate a competing business under a different name in its territories." *Id.* DMP also alleges that Sinclair told Michael that, if DMP chose to leave the franchise system, Sinclair would "go to bat for her,"

- 2 -

in his role as Ben Franklin's Brand President, so that DMP could buy out of the franchise by paying only the minimum monthly royalty fee for the months remaining in the franchise term. *Id.* Over the next six months, DMP continued to ask Sinclair for a buyout price, but those requests were met with silence. *Id.* at PageID.102.

## II. STANDARD OF REVIEW

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert*, 517 F.3d at 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do.").

Although the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the court need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) ("The plausibility of an inference depends

on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."). If not, then the court must grant the motion to dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## III. ANALYSIS

### A. Threshold Issues

#### 1. Conversion Into Motion for Summary Judgment

DMP requests that Ben Franklin's motion to dismiss be converted into one for summary judgment. ECF No. 22 at PageID.391–92. For the reasons stated on the record at the July 9, 2024 motion hearing, and because neither this Court nor the Parties rely on materials outside the pleadings for purposes of this motion, the request for conversion will be denied. Ben Franklin's motion is properly considered under Civil Rule 12(b)(6).

#### 2. Choice of Law

The Franchise Agreements at issue each contain choice-of-law provisions, variously selecting Florida, Texas, or Maryland law—not Michigan. ECF No. 1 at PageID.11. However, the Parties have made choice of law a nonissue for purposes of this motion. *See* ECF Nos. 19 at PageID.131; 22 at PageID.392–95 (agreeing the choice-of-law provision is "ultimately immaterial" to the promissory estoppel claim and analyzing the claim under Michigan law); *see also* ECF Nos. 19 at PageID.136 n.3 (asserting that the MFIL does not apply because of the agreements' choice-of-

law provisions but addressing the claim on the merits to "avoid the necessity of a potentially complex choice of law analysis"). Accordingly, this Court will assume, as the Parties have for this motion, that Michigan law applies.

## B. Promissory Estoppel

Ben Franklin argues that DMP's counterclaim for promissory estoppel fails because there are express, enforceable contracts (i.e., the Franchise Agreements) which broadly govern the Parties' relationship. *See* ECF No. 19 at PageID.131–134. DMP responds that it can maintain the claim so long as it seeks recovery for "extras" that do not expressly contradict each contract's written terms. *See* ECF No. 22 at PageID.392–95.

Promissory estoppel is an equitable theory that allows courts to enforce an implied agreement between parties who lack an express contract. *APJ Assocs., Inc. v. N. Am. Philips Corp.*, 317 F.3d 610, 617 (6th Cir. 2003). However, when an express contract governs the parties' relationship and covers the same interactions for which a party seeks equitable relief, promissory estoppel does not apply. *Ingenieurbüro Giebisch & Volkert GMBH v. ASIMCO Int'l, Inc.*, No. 16-11760, 2017 WL 6539055, at *9 (E.D. Mich. Dec. 21, 2017) (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 183 (6th Cir. 1996)).

For this reason, courts have generally entertained promissory estoppel claims only when there is doubt as to the existence of a valid contract—that is, as an

*alternative* theory of recovery *if* a contract is found to be unenforceable. *See Silver Foam Distrib. Co. v. Labatt Brewing Trading Co.*, No. 20-10681, 2021 WL 859043, at *12 (E.D. Mich. Mar. 8, 2021) (dismissing promissory estoppel claim when plaintiff failed to plead, even in the alternative, that the contract at issue was unenforceable); *Advanced Plastics Corp. v. White Consol. Indus.*, 828 F. Supp. 484, 491 (E.D. Mich. 1993) ("alternative pleading of an implied contract claim [like promissory estoppel] is only allowed in a contract setting where a party doubts the existence of a contract," because "promissory estoppel is an alternative theory of recovery where no contract exists").

DMP acknowledges that the Franchise Agreements are enforceable and broadly cover the Parties' relationship. Still, DMP responds that the Michigan Court of Appeals carved out an exception to the general rule in *Cascade Electric Co. v. Rice*, 245 N.W.2d 774 (Mich. Ct. App. 1976), thereby allowing parties recover based on equitable theories like promissory estoppel even in the face of a valid contract. ECF No. 22 at PageID.393–95. In *Cascade*, the plaintiff agreed to construct a building for the defendant according to a written contract. 245 N.W.2d at 775. The plaintiff ended up doing work not contemplated by the contract when the defendant allegedly promised to pay extra for it. *Id.* at 777. But then, the defendant argued that the plaintiff could not recover for the extra work because the parties had an enforceable contract covering the same subject matter—constructing the building.

- 6 -

*Id.* The court rejected this theory, concluding that a party could recover on a quantum meruit theory for performing "extras" not contemplated in the original contract. *Id.*

DMP analogizes this case to *Cascade*, contending that DMP may similarly enforce Ben Franklin's alleged promise to buy out the remainder of the franchise terms, because that promise was an "extra" not contemplated by the original contract. *See* ECF No. 22 at PageID.394–95. Ben Franklin concedes that the Franchise Agreements do not contemplate a buyout. ECF No. 25 at PageID.417.

But DMP stretches this argument too thin because it misunderstands why the *Cascade* court allowed recovery based on quantum meruit in the first place. The theory underlying quantum meruit is that "the law will imply a contract in order to prevent unjust enrichment when one party inequitably receives and retains a benefit from another." *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 903 (Mich. Ct. App. 2006). That was the situation in *Cascade*, as the defendant would have been unjustly enriched if the plaintiff was not compensated for the extra work performed. 245 N.W.2d at 777–78. However, there is no unjust enrichment here: DMP does not allege that it performed any extra work beyond what was contemplated by the Franchise Agreements, nor that Ben Franklin received and retained any corresponding benefit. Accordingly, there is no basis to conclude that this "narrow" exception applies. *See Ingenieurbüro*, 2017 WL 6539055, at *9.

Even assuming that DMP could assert a promissory estoppel claim, it would fail because DMP has not alleged a "clear and definite" promise upon which it could reasonably rely.

Under Michigan law, promissory estoppel requires "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in the circumstances such that the promise must be enforced if injustice is to be avoided." *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 552 (Mich. Ct. App. 1999).

For promissory estoppel to apply, the promise must also be clear and definite, and a party's reliance is reasonable only if there was an actual promise made. *Charter Twp. of Ypsilanti v. Gen. Motors Corp.*, 506 N.W.2d 556, 559 (Mich. Ct. App. 1993) (citing *State Bank of Standish v. Curry*, 500 N.W.2d 104, 108–09 (Mich. 1993)), *appeal denied*, *remanded sub nom. Charter Twp. of Ypsilanti, Cnty. of Washtenaw v. Gen. Motors Corp.*, 509 N.W.2d 152 (Mich. 1993). To determine whether there was a clear and definite promise, courts use an objective test that examines "the words and actions of the transaction as well as the nature of the relationship between the parties and the circumstances surrounding their actions." *Standish*, 500 N.W.2d at 109.

- 8 -

Here, DMP alleges that in an April 2023 meeting, Ben Franklin's Brand President, Sinclair, "made a promise to DMP that it would be allowed to buy-out of the remainder of the term of [the Franchise Agreements at issue] so that DMP could operate its business independently," and that in such an instance, DMP could keep its customers. ECF No. 16 at PageID.101, 107. Specifically, DMP alleges that Sinclair promised to "go to bat" for DMP so that DMP could buy out of the Franchise Agreements by paying the minimum monthly royalty fee. *Id.* at PageID.101.

Even assuming these statements to be true, none is sufficiently "clear and definite" for promissory estoppel. *Ypsilanti*, 506 N.W.2d at 559. Notably, DMP alleges no agreed-upon terms allowing it to actually buy out of the Agreements. Additionally, the phrase "go to bat" suggests that Ben Franklin's President, at most, promised to try to convince someone else to approve the buyout, not that he promised to approve it himself. Moreover, the allegation that DMP continued to ask Sinclair for buyout terms but received no response further undercuts the assertion that there was a clear and definite promise between the Parties.

Accordingly, DMP's promissory estoppel claim will be dismissed.

### C. Right of Action Under the MFIL

This next issue pits principles of *stare decisis* and federalism against each other. Over 30 years ago, the Sixth Circuit made an *Erie* guess about an undecided issue of state law, but certain evidence—including the statute's text and a later

Michigan Court of Appeals decision—suggests that the Sixth Circuit's interpretation no longer controls. Must this Court follow the earlier Sixth Circuit precedent on the meaning of state law, even if doing so would contradict the statute's text and the state courts' later interpretation of state law?

As background, § 445.1527 of the MFIL makes certain provisions in franchise agreements void and unenforceable. Specifically, DMP alleges that Ben Franklin violated § 445.1527(c), which voids "[a] provision that permits a franchisor to terminate a franchise prior to the expiration of its term except for good cause."[1] ECF No. 16 at PageID.108.

Yet there is a threshold question: may private parties sue to remedy § 445.1527 violations? DMP says yes, relying on two Sixth Circuit cases that implied a private right of action under the MFIL. *See* ECF No. 22 at PageID.397–402. Ben Franklin says no, noting that no Michigan court had weighed in before those cases were decided, and that since then, the Michigan Court of Appeals has held there is no such right of action. ECF Nos. 19 at PageID.136–41; 25 at PageID.419–21. What's more, § 445.1534 of the MFIL, by its plain language, appears to foreclose any implied rights of action whatsoever:

---

[1] "Good cause shall include the failure of the franchisee to comply with any lawful provision of the franchise agreement and to cure such failure after being given written notice thereof and a reasonable opportunity, which in no event need be more than 30 days, to cure such failure." MICH. COMP. LAWS § 445.1527(c).

> Except as explicitly provided in this act, civil liability in favor of any private party shall not arise against a person by implication from or as a result of the violation of a provision of this act or a rule or order hereunder.

MICH. COMP. LAWS § 445.1534.

To start, consider the Sixth Circuit cases DMP relies upon. In *General Aviation v. Cessna Aircraft Co.*, 915 F.2d 1038, 1043–44 (6th Cir. 1990), the court implied a private right of action for violations of § 445.1527, but it did so without considering the plain language of § 445.1534 noted above. When the court again considered the question a few years later in *Geib v. Amoco Oil Co.* (*Geib I*), 29 F.3d 1050, 1059–61 (6th Cir. 1994) and *Geib v. Amoco Oil Co.* (*Geib II*), 163 F.3d 329, 330 (6th Cir. 1995), it cast doubt on whether *General Aviation* was correctly decided. The court noted that *General Aviation* conflicted with § 445.1534 and that there was "new evidence suggesting that both the executive and legislative branches of the Michigan government intended to vest sole enforcement authority in the Attorney General of Michigan, not to create a private cause of action." *Geib II*, 163 F.3d at 330 (citing *Geib I*, 29 F.3d at 1058–59, 1060 n.7).

In light of its doubt that the MFIL created a private right of action for § 445.1527 violations, and seeking to avoid "the problem of authoritatively determining unresolved state law involved in federal litigation," the Sixth Circuit certified the question to the Michigan Supreme Court. *Geib I*, 29 F.3d at 1061 (quoting *Clay v. Sun Ins. Office Ltd.*, 363 U.S. 207, 212 (1960)). However, the

- 11 -

Michigan Supreme Court declined certification, and so the Sixth Circuit saw "no alternative" but to follow its prior *General Aviation* holding. *In re Certified Question*, 527 N.W.2d 513 (Mich. 1994); *Geib II*, 163 F.3d at 330.

In 1997, a Michigan court finally had the opportunity to address this state-law issue. In *Franchise Management Unlimited, Inc. v. America's Favorite Chicken*, 561 N.W.2d 123, 129 (Mich. Ct. App. 1997), the Michigan Court of Appeals acknowledged the Sixth Circuit holdings but contradicted them. It held that "the [Michigan] Legislature clearly expressed its intent [in § 445.1534] that the courts not imply a private right of action to remedy violations of the MFIL." *Id.*; *see also Drery v. Marathon Oil Corp.*, No. 200674, 1998 WL 1989877, at *8 (Mich. Ct. App. 1998). The Michigan Supreme Court then denied leave to appeal, 590 N.W.2d 570 (Mich. 1999) (Table), and also reconsideration, 595 N.W.2d 843 (Mich. 1999) (Table), effectively letting the Michigan Court of Appeals' decision stand.

In sum, that is the current state of things: despite the Sixth Circuit previously holding that there is a right of action, the Michigan Court of Appeals' 1997 decision—which is still good law—held that there is no right of action. Both times, the Michigan Supreme Court declined to weigh in, and it has not addressed the matter since. What is a federal district court to do?

When deciding substantive state-law issues, federal courts must apply the same law that Michigan state courts would apply. *Auburn Sales, Inc. v. Cypros*

*Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018) (citing *Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997)). Generally, that means following what the Michigan Supreme Court has said on the matter. *Kirk*, 16 F.3d at 707. But when it has not yet spoken, federal courts "must predict how [the Michigan Supreme Court] would rule by looking to all available data," including decisions of the Michigan Court of Appeals. *Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349, 360 (6th Cir. 2012) (quoting *Allstate Ins. Co. v. Thrifty Rent–A–Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001)).

When making that prediction, federal courts sometimes treat Michigan Court of Appeals decisions as "binding authority" in the Michigan Supreme Court's absence. *Wieczorek v. Volkswagenwerk, A.G.*, 731 F.2d 309, 310 (6th Cir. 1984); *see also Montgomery v. Kraft Foods Glob., Inc.*, 822 F.3d 304, 308–09 (6th Cir. 2016) (quoting *Berrington v. Wal–Mart Stores, Inc.*, 696 F.3d 604, 608 (6th Cir. 2012)). Other times, state appellate-court decisions have been considered only a data point— albeit a very important one—in determining how the state supreme court would rule. *See Horizon Lawn Maint., Inc. v. Columbus-Kenworth, Inc.*, 188 F. Supp. 3d 631, 635 (E.D. Mich. 2016) (collecting cases); *Grantham & Mann, Inc. v. Am. Safety Prods., Inc.*, 831 F.2d 596, 608–09 (6th Cir. 1987). Yet even in the latter scenario, Michigan Court of Appeals decisions are "normally treated as authoritative absent a

*strong showing* that the Michigan Supreme Court would decide the issue differently." *Auburn Sales*, 898 F.3d at 715 (cleaned up) (emphasis in original).

Here, DMP has not made a "*strong showing*" that the Michigan Supreme Court would decide the issue differently than did the Michigan Court of Appeals in *Franchise Management*. *Id.*; *see also CJ Consultants, LLC v. Window World, Inc.*, No. 1:22-CV-3, 2022 WL 4354265, at *7 (W.D. Mich. Sept. 20, 2022). DMP argues that because the Michigan Supreme Court previously declined to accept certification of the Sixth Circuit holdings, it had "no concerns" with those decisions. ECF No. 22 at PageID.399. But again, *Franchise Management* had not yet been decided, and the Michigan Supreme Court ultimately let it stand despite it contradicting the Sixth Circuit holdings. 595 N.W.2d 843 (Mich. 1999). If anything, the court's refusal to review *Franchise Management* is more instructive because it suggests agreement with the Michigan Court of Appeals over the Sixth Circuit. *See Lukas v. McPeak*, 730 F.3d 635, 638 (6th Cir. 2013) ("State appellate court precedent is considered particularly persuasive where the [state] Supreme Court has refused to review the decision."). After all, by declining review, the Michigan Supreme Court effectively made *Franchise Management* the law of the land. *Tebo v. Havlik*, 343 N.W.2d 181, 185 (Mich. 1984) ("A decision by any panel of the Court of Appeals is, therefore, controlling statewide until contradicted by another panel of the Court of Appeals or reversed or overruled by this Court."). Accordingly, *Franchise Management* is

currently the "authoritative" statement of Michigan law. *See Auburn Sales*, 898 F.3d at 715.

Even so, DMP invokes the "fundamental principle" of *stare decisis* as for why this Court must follow the contrary Sixth Circuit holdings over *Franchise Management*. ECF No. 22 at PageID.398. True, generally a published decision of the circuit court "remains controlling authority" unless overruled *en banc* or modified by the United States Supreme Court. *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

However, when interpreting state law, "the federal court is not bound by ordinary principles of *stare decisis*." *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009) (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)). Rather, in these situations a "panel may reconsider [a previous panel decision interpreting state law when] the [state] courts have expressly indicated . . . that they disagree with [the previous panel decision] and would have decided it differently." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1095 (6th Cir. 2010) (alterations in original) (quoting *Hampton v. United States*, 191 F.3d 695, 701 (6th Cir. 1999)). Put otherwise, an earlier panel decision remains binding "unless [state] law has measurably changed in the meantime." *Rutherford*, 575 F.3d at 619 (quoting *Big Lots Stores, Inc. v. Luv N'Care, Ltd.*, 302 F. App'x 423, 427 (6th Cir. 2008) (unpublished)).

- 15 -

Here, *Franchise Management* "expressly indicated" that the state courts disagree with the Sixth Circuit's rulings in *General Aviation* and *Geib*. *See Bennett*, 607 F.3d at 1095. This is strong evidence that state law has "measurably changed in the meantime," which effectively diminishes—if not extinguishes—the precedential effect of the prior Sixth Circuit rulings. *See Rutherford*, 575 F.3d at 619.

In this way, principles of *stare decisis*, as important as they are, may sometimes yield to the federal courts' great responsibility under *Erie Railroad Co.*, 304 U.S. 64 (1938), to properly determine state law. *See Rutherford*, 575 F.3d at 623–24 (Clay, J., concurring in part and dissenting in part); *see also Lindenberg v. Jackson Nat'l Life Ins. Co.*, 919 F.3d 992, 1003 (6th Cir. 2019) (recognizing that federal courts are "merely predictors of state law," and so "stare decisis does not turn unsettled questions of law into settled ones"). Indeed, because a federal court sitting in diversity is, "in effect, only another court of the State," *Guaranty Trust Co. v. York*, 326 U.S. 99, 108 (1945), it is especially important for lower federal courts "to make sure that questions of state law are 'settled right,' not that they are just 'settled.'" *Rutherford*, 575 F.3d at 627 (Clay, J., concurring in part and dissenting in part).

The obligation to make sure that state law is "settled right" falls on all federal courts—not just the appellate courts. Indeed, it would be strange for this Court, when sitting only as another Michigan state court, to ignore state precedent barring implied rights of action under the MFIL, *see Guaranty Trust*, 326 U.S. at 108, or to ignore

the plain language of § 445.1534 barring the same, s*ee Erie R.R.*, 304 U.S. at 78 (recognizing the basic principle that "the law of the state [may] be declared by its Legislature"). Doing so would perpetuate the current disharmony between federal- and state-court interpretations of Michigan law and encourage the forum shopping that *Erie* sought to prevent.  *See Hanna v. Plumer*, 380 U.S. 460, 468 (1965).

Therefore, this Court will apply Michigan law as pronounced by the Michigan Court of Appeals, and declines to recognize an implied private right of action for violations of § 445.1527. Accordingly, DMP's MFIL counterclaim will be dismissed.

### D. Leave to Amend

Finally, DMP requests leave to amend its countercomplaint but does so only in its response, failing to submit a separate motion or a proposed amended pleading. ECF No. 22 at PageID.402–03; *see* E.D. Mich. LR 15.1.

In any event, DMP's request for leave to amend will be denied as futile because any amendment would still not withstand a motion to dismiss. *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). No set of facts could change the conclusions that, as a matter of law, (1) DMP may not assert a promissory estoppel claim when there are valid contracts governing the Parties' relationship, and (2) DMP does not have a private right of action under Michigan law for violations of § 445.1527 of the MFIL.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Plaintiffs' Motion to Dismiss Counts II and III of the Countercomplaint, ECF No. 19, is **GRANTED**. Counts II and III of the Countercomplaint, ECF No. 16, are **DISMISSED**.

**This is a non-final order as does not close the above-captioned case**.


*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated:  8/29/2024

- 18 -